# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SST MILLENNIUM LLC,** <br> Plaintiff, <br> vs. <br> **MISSION STREET DEVELOPMENT LLC, ET AL,** <br> Defendants. | CASE NO. 18-cv-06681-YGR <br><br> **ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND STAY ACTIONS** <br><br> Re: Dkt. No. 31 |
| **MILLENNIUM1002 LLC,** <br> Plaintiff, <br> vs. <br> **MISSION STREET DEVELOPMENT LLC, ET AL.,** <br> Defendants. | CASE NO. 18-cv-06684-YGR <br><br> Re: Dkt. No. 29 |

Plaintiffs SST Millennium LLC ("SST") and Millennium1002 LLC ("Millennium1002") bring related actions (Case Nos. 18-cv-06681 and 18-cv-06684, respectively) against defendants Mission Street Development LLC ("MSD"), Mission Street Holdings, LLC ("MSH"), Millennium Partners ("MP"), and Does 1-50 inclusive. (Dkt. No. 1 ("Compl.").)[1] In each case, plaintiffs assert fraudulent concealment, suppression, nondisclosure, and intentional misrepresentation against all defendants. (*Id.* ¶¶ 44–63.)

---

[1] The Court notes that plaintiffs' complaints are nearly identical. Accordingly, the Court will refer to *SST Millennium LLC v. Mission Street Development LLC*, Case No. 18-cv-06681-YGR unless stated otherwise.

United States District Court
Northern District of California

Now before the Court are defendant MSD's motions to compel arbitration and stay the instant actions pursuant to 9 U.S.C. § 3.[2] (Dkt. No. 31 ("MTC").) Having carefully considered the pleadings, the papers and exhibits submitted, and oral argument by counsel on April 9, 2019, and for the reasons set forth below, the Court **GRANTS** MSD's motions to compel arbitration and **STAYS** the actions in their entireties.

## I. BACKGROUND

On June 16, 2009,[3] SST purchased and closed escrow on a two-bedroom condominium, Unit 34D, at 301 Mission Street, San Francisco, California 94105 (the "Millennium Tower"). (Compl. ¶ 36.) Millennium1002 purchased and closed escrow on Unit 1002 in the Millennium Tower on June 13, 2012. (Case No. 18-cv-06684-YGR, Dkt. No. 1 ("Millennium1002 Compl.") ¶ 37.) The Millennium Tower is a luxurious fifty-eight story mixed-use real estate development. (Compl. ¶¶ 21–22.) Plaintiffs allege that defendants "embarked on a scheme to defraud and conceal" the fact that the Millennium Tower was sinking and tilting, which "could cause the frame of the building to distort, floors to slope, walls and glass to crack, and doors and windows to malfunction." (*Id.* ¶¶ 27, 33.) Plaintiffs further allege that each of the defendants "is the alter ego of the other" and that "MSD is primarily liable" to plaintiffs, whereas "MSH and MP are both secondarily liable" for their participation in the scheme. (*Id.* ¶¶ 5, 51.)

On May 14, 2009, SST entered into a residential purchase agreement with MSD. (Compl., Ex. B ("Agreement").) Millennium1002 entered into a substantially similar agreement with MSD on May 30, 2012. (Millennium1002 Compl., Ex. B.) The Agreement contains an arbitration provision.

---

[2] In support of their opposition to MSD's motion to compel, plaintiffs request judicial notice of MSD's statement of information, MSH's statement of information, and two of Millennium Mission Street Partners, LLC's statements of information. (Dkt. No. 36.) As these documents are matters of public record filed with the California Secretary of State, the Court **GRANTS** plaintiffs' request for judicial notice. *See Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001) (noting "a court may take judicial notice of matters of public record" and documents whose "authenticity . . . is not contested" and upon which a plaintiff's complaint relies) (internal quotation marks omitted) (alterations in original).

[3] The Court notes that the complaint incorrectly states "June 16, 2019."

2

(*Id.* at 11–12.) In pertinent part, the arbitration provision provides as follows:

> [A]ny claim or dispute between the buyer and the seller . . . arising out of this contract or relating in any way to the property being purchased . . . shall be determined by submission to binding arbitration . . . . The arbitrator shall apply California substantive law in rendering a final decision . . . . [T]he Federal Arbitration Act (9 U.S.C. § 1 et seq.) now in effect and as it may be hereafter amended will govern the interpretation and enforcement of the arbitration provisions set forth herein . . . disputes [will be] decided by neutral arbitration as provided by California Law . . . you may be compelled to arbitrate under the authority of the California Code of Civil Procedure.

(*Id.*) On November 2, 2018, plaintiffs filed the instant actions asserting diversity jurisdiction. (*See* Compl. ¶¶ 12–15.) On February 19, 2019, MSD filed the instant motions to compel arbitration and stay the actions. (MTC; *see also* Case No. 18-cv-06684-YGR, Dkt. No. 29.)

## II. DISCUSSION

### A. Motions to Compel Arbitration

MSD moves to compel arbitration of plaintiffs' claims in the instant actions pursuant to the arbitration provision contained in their respective contracts. (Motion at 2–4.) Plaintiffs do not dispute that a valid arbitration agreement exists or that their claims fall within the scope of the Agreement. Instead, plaintiffs argue that the California Arbitration Act ("CAA"), not the Federal Arbitration Act ("FAA"), governs the arbitration provision and that the Court should not enforce the arbitration provision pursuant to Section 1281.2(c) of the California Code of Civil Procedure.

Section 1281.2(c) permits nonenforcement of an otherwise binding arbitration agreement where "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." Cal. Code Civ. P. § 1281.2(c). The FAA lacks a comparable provision. *See* 9 U.S.C. § 3; *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1209–10 (9th Cir. 1998) ("Unlike the FAA, California's arbitration rules grant courts the discretion to stay arbitration proceedings pending resolution of related litigation").

3

The FAA requires a district court to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement. 9 U.S.C. § 3. A party may bring a motion in a federal district court to compel arbitration. *Id.* § 4. The FAA reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotations and citations omitted). "In accordance with that policy, 'doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). The FAA broadly provides that an arbitration clause in a contract involving a commercial transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

In ruling on a motion to compel arbitration, a court's role is typically limited to determining whether: (i) an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope of the agreement; and (iii) the agreement is valid and enforceable. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). However, "if there is a genuine dispute of material fact as to any of these queries, a [d]istrict [c]ourt should apply a 'standard similar to the summary judgment standard of Fed.R.Civ.P. 56.'" *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1175 (N.D. Cal. 2012) (quoting *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004)); *see also Starke v. SquareTrade, Inc.*, 913 F.3d 279, 281 n.1 (2d Cir. 2019) (same). Once a court is satisfied that the parties entered into an enforceable arbitration agreement covering the subject of their litigation, the Court must promptly compel arbitration. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration

agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Generally, if a contract contains an arbitration provision, arbitrability is presumed, and "doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

Parties "may agree to state law rules for arbitration even if such rules are inconsistent with those set forth in the [FAA]." *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269 (9th Cir. 2002) (citing *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 479 (1989)). In order to do so, "parties must clearly evidence their intent to be bound by such rules[,] . . . the strong default presumption is that the FAA, not state law, supplies the rules for arbitration." *Sovak*, 280 F.3d at 1269 (internal citations omitted). Courts must "apply ordinary state-law principles that govern the formation of contracts" when interpreting arbitration agreements. *First Options of Chi., Inc., v. Kaplan*, 514 U.S. 938, 944 (1995). "Under California contract law, the court must 'endeavor to effectuate the mutual intent of the parties.'" *Wolsey*, 144 F.3d at 1210 (citing *City of El Cajon v. El Cajon Police Officers' Ass'n*, 49 Cal.App.4th 64 (1996)).

In *Wolsey*, the Ninth Circuit considered whether to apply federal or California arbitration rules to a contract that "contains both an agreement to arbitrate and a general choice-of-law clause in the same section." 144 F.3d at 1211. There, the plaintiff argued that California law applied and therefore the court had discretion to refuse to compel arbitration pursuant to California Code of Civil Procedure Section 1281.2(c). *Id.* at 1209–10. The court found that absent specific language to the contrary, "general choice-of-law clauses do not incorporate state rules that govern the allocation of authority between courts and arbitrators." *Id.* at 1212–13 (citing *Mastrobuno v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63–64 (1995) (finding that "the best way to harmonize the choice-of-law provision with the arbitration provision is to read 'the laws of the State of New York' to encompass

5

substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators")). The court concluded that Section 1281.2(c) "assuredly does affect California's 'allocation of power between alternative tribunals.'" *Wolsey*, 144 F.3d at 1212. Accordingly, the FAA governed the arbitration provision because the contract did "not contain a specific reference" to Section 1281.2(c). *Id.*

Here, plaintiffs rely on two statements in the arbitration provision to assert that the parties expressly agreed to arbitrate pursuant to the California Code of Civil Procedure.[4] (Opp. at 5.) Specifically, that the parties "may be compelled to arbitrate under the authority of the California Code of Civil Procedure," and that they "are agreeing to have any dispute arising out of the matters included in the 'arbitration of disputes' provision decided by neutral arbitration as provided by California law." (*Id.* (citing Agreement at 11–12).) However, plaintiffs overlook the Agreement's critical reference to the FAA, which states that "the Federal Arbitration Act . . . will govern the interpretation and enforcement of the arbitration provisions set forth herein." (Agreement at 12.) Moreover, the Agreement lacks any specific reference to Section 1281.2(c), despite numerous

---

[4] Plaintiffs cite three cases to argue that the parties agreed to apply California law and therefore the CAA applies. (*See* Opp. at 5 (citing *Mastick v. TD Ameritrade, Inc.*, 209 Cal.App.4th 1258 (Cal. Ct. App. 2012); *Cronus Invs., Inc. v. Concierge Servs.*, 35 Cal.4th 376 (Cal. 2005); *Volt*, 489 U.S. at 468.) However, the Court finds no authority, including those cited by plaintiffs, which holds that the CAA governs an arbitration agreement with express language indicating the parties' intent for the FAA to govern the agreement's interpretation and enforcement. *See Mastick*, 209 Cal.App.4th at 1264 (finding that the CAA applies to an arbitration agreement with a choice-of-law clause providing that the agreement was "governed by the laws of the State of California"); *Cronus*, 35 Cal.4th at 387 (finding that the CAA governed an arbitration agreement, which provided that it "shall be construed and enforced in accordance with and governed by the laws of the State of California"). With respect to *Volt*, there the Court "assum[ed] the choice-of-law clause meant what the [California] Court of Appeal found it to mean" and held that the FAA does not preempt Section 1281.2(c) if "the parties have agreed to arbitrate in accordance with California law." *Volt*, 489 U.S. at 476–77. The Court did not, however, interpret the underlying arbitration agreement. *Id.*; *see also Wolsey*, 144 F.3d at 1213 (finding that "in interpreting the [arbitration] Agreement, we are bound . . . *not* by *Volt*" because the Court in *Volt* "declined to review a [California] state court's interpretation" of the contract) (emphasis supplied).

6

citations to other California statutes.[5] (*Id.*) Accordingly, in light of current precedent, the Court may not address plaintiff's argument relating to California Code of Civil Procedure Section 1281.2(c) but instead must compel plaintiffs to resolve their disputes with MSD through arbitration pursuant to the FAA.[6] Thus, the Court **GRANTS** MSD's motions to compel plaintiffs into arbitration.

### B.     Motions to Stay Proceedings as to Remaining Defendants

It is well-settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). When a court compels arbitration, as "a matter of its discretion to control its docket," it may stay litigation among non-arbitrating parties pending the outcome of arbitrable claims or a parallel arbitration. *Moses H. Cone*, 460 U.S. at 20 n.23; *see also, e.g.*, *BrowserCam, Inc. v. Gomez, Inc.*, No. 08–CV–02959–WHA, 2009 WL 210513, at *3 (N.D. Cal. Jan. 27, 2009) (it is "within a district court's discretion

---

[5] The Court notes that the Ninth Circuit diverges from California courts in how to interpret agreements containing potentially conflicting choice-of-law and procedural arbitration rules. The California courts in *Cronus* and *Mastick* declined to follow *Wolsey* and *Mastrobuono* and found that Section 1281.2(c) "is *not* a special rule limiting the authority of arbitrators" and therefore arbitration agreements are not required to reference specifically the statute for it to apply. *See Cronus*, 35 Cal.4th at 393 & n.8 ("We decline to follow *Wolsey* . . . in which the court relied on *Mastrobuono*" to interpret Section 1281.2(c)); *Mastick*, 209 Cal.App.4th at 1265 (same). Here, the Court finds that the FAA governs under either approach because of the Agreement's explicit language.

[6] *See, e.g.*, *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-cv-03162-BLF, 2018 WL 3008562, at **6–7 (N.D. Cal. June 15, 2018) (finding that, under *Mastrobuono* and *Wolsey*, the FAA governed the parties' arbitration agreement despite a choice-of-law clause providing that it "shall be interpreted and construed under the laws of the State of California" because the agreement "did not refer to § 1281.2(c)"); *De Souza v. Pulte Home Corp.*, No. S-08-337 LKK/GGH, 2008 WL 11385594, at *4 (E.D. Cal. Oct. 9, 2008) (finding there was "no similar expression that the parties intended California's arbitration law, not the FAA, to apply" even though the arbitration agreement provided that the parties "may be compelled to arbitrate under the authority of the California Code of Civil Procedure"); *Affholter v. Franklin Cty. Water Dist.*, No. 1:07-CV-0388 OWW DLB, 2008 WL 5385810, at *3 (E.D. Cal. Dec. 23, 2008) (finding that "the Arbitration Provision specifically provides that the FAA shall govern its enforcement" despite containing language identical to that at issue here regarding the California Code of Civil Procedure).

whether to stay, '[c]onsiderations of economy and efficiency,' an entire action, including issues not arbitrable, pending arbitration") (quoting *United States ex rel. Newton v. Neumann Caribbean Int'l., Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985)).

In contemplating a stay, a court should consider (A) the possible damage which may result from the granting of a stay; (B) the hardship or inequity which a party may suffer as a result of denial of a stay; and (C) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

Having granted MSD's motion to compel arbitration, the FAA requires the Court to stay the action with respect to plaintiffs' claims against MSD. *See* 9 U.S.C. § 3 ("[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . [the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had."). As to litigants who are not parties to the arbitration agreement, the court may stay the litigation as a matter of discretion to await the outcome of the pending arbitration. *Moses H. Cone*, 460 U.S. at 20 n.23. Accordingly, the Court now turns to the question of whether to stay the claims against the remaining defendants MSH and MP pending completion of arbitration.

1. Possible Damage Resulting from Grant of Stay

Courts may issue a stay if "it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Lockyer*, 398 F.3d at 1111 (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979)). The duration of a stay must reflect "the strength of the justification given for it." *See Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000). Thus, an especially lengthy or "indefinite" stay "require[s] a

8

greater showing to justify it." *Id.*

Plaintiffs argue that they "will be severely damaged" if the Court stays the actions in their entireties. (Opp. at 9.) Specifically, plaintiffs aver that staying plaintiffs' claims against MSH and MP will deprive them of a "just and speedy resolution of this dispute." (*Id.*) However, as MSD points out, "arbitration over the straightforward claim that MSD failed to disclose material facts" likely will conclude within a reasonable time and not cause undue delay. (*See* Reply at 7.) In addition, plaintiffs suggest that any judgment against MSD "will be a meaningless paper victory" because MSD allegedly "is a shell corporation with limited assets." (Opp. at 9.) But even if plaintiffs are correct that MSD "may be at risk of bankruptcy and default," plaintiffs must still pursue arbitration against MSD before they could recover from secondarily liable MSH and MP. (*See* Compl. ¶ 51 ("MSH and MP are both secondarily liable.").) Therefore, granting a reasonable stay poses minimal risk of damage to plaintiffs in these cases.

### 2. Hardship or Inequity Resulting from Denial of Stay

MSD argues that it may experience hardship if the Court allows plaintiffs to proceed with their claims against MSH and MP because of the possibility of inconsistent and adverse rulings. (MTC at 5.) Specifically, "if the arbitration against MSD on the primary claims proceeded on a parallel track with a secondary liability trial [for MSH and MP] in this Court, there would be a risk that the arbitrator could find no primary liability, while this Court hypothetically could find secondary liability." (Dkt. No. 39 ("Reply") at 5.) Plaintiffs concede in their opposition that their claims against defendants all arise from the same conduct and may give way to inconsistent rulings. (Opp. at 6.)

The Court finds that allowing plaintiffs to pursue identical claims against MSH and MP in court while plaintiffs concurrently arbitrate their claims with MSD might undermine MSD's

9

contractual right to resolve its disputes through arbitration. *See Hill v. G.E. Power Sys., Inc.*, 282 F.3d 343, 347–48 (5th Cir. 2002) (finding claims against signatory party were inseparable from claims against non-signatory and denial of stay would "undermine the arbitration proceedings . . . thereby thwarting the federal policy in favor of arbitration"). Accordingly, MSD has sufficiently demonstrated a "clear case of hardship or inequity" in the event that the Court allows plaintiffs to proceed simultaneously with their claims against MSH and MP. *See Lockyer*, 398 F.3d at 1112.

### 3. Effect of a Stay on the Orderly Course of Justice

In determining whether a stay promotes the orderly course of justice, courts may consider the degree of overlap in factual allegations between parallel cases in order to avoid unnecessary duplicative litigation. *Leyva*, 593 F.2d at 863. In general, a stay should be granted where the resolution of issues in the arbitration would be determinative of the issues in the lawsuit. *See Lockyer*, 398 F.3d at 1110 (noting that a discretionary stay is warranted where parallel action will help settle or simplify questions of fact and law).

Plaintiffs claim that "regardless of the outcome of arbitration, the claims against [MP] and [MSH] will need to be litigated in this Court." (Opp. at 8.) However, MSD argues that "it is very unlikely the stayed claims *ever* proceed because if MSD satisfies an award . . . there is no basis on which to proceed with the secondary liability claims." (Reply at 6 (emphasis in original).) The Court agrees with MSD. Moreover, given the interdependence and identical nature of plaintiffs' claims against each defendant, resolution of plaintiffs' claims against MSD will simplify "issues, proof, and questions of law" with respect to the claims against MSH and MP. *See Lockyer*, 398 F.3d at 1110. Accordingly, the Court finds that issuing a stay for both actions in their entireties will help preserve judicial resources and promote the orderly course of justice.

4. Duration of Stay

Following the April 9, 2019 hearing, the parties submitted, at direction of the Court, a joint statement addressing (1) the specific discovery necessary to plaintiff regarding defendants MSH and MP; (2) the time period for the requested stay; and (3) a proposed schedule for when the stay is lifted as to MSH and MP. (Dkt. No. 42 ("Sub.").) Plaintiffs request a two-month stay, and defendants request an eighteenth-month stay. (*Id.* at 4, 7.) The Court finds a stay through the end of 2019 appropriate.

**III. CONCLUSION**

For the foregoing reasons, MSD's motions to compel arbitration and stay the proceedings are **GRANTED**. Accordingly, the instant actions are **STAYED** in their entireties until **Monday, January 13, 2020**.

The Court **SETS** this matter for a further case management conference on **Monday, January 13, 2020** on the Court's **2:00 p.m.** calendar in the Federal Courthouse, 1301 Clay Street, Oakland, California in Courtroom 1. The parties shall file an updated joint case management statement by no later than **Monday, January 6, 2020**.

This Order terminates Docket Number 31 of Case No. 18-cv-06681-YGR and Docket Number 29 of Case No. 18-cv-06684-YGR.

**IT IS SO ORDERED.**

Dated: June 3, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**